## Case No. 12,317.

SAN FRANCISCO SAVINGS & LOAN SOC.
v. CARY.

[2 Sawy. 333; 1 17 Int. Rev. Rec. 109.]

Circuit Court, D. California. Jan. 20, 1873.[2]

INTERNAL REVENUE — BANKS — DIVIDENDS — INTEREST.

1. If an appeal is taken from an illegal assessment, decided against the appellant, and the tax afterward collected, it is not necessary to take a second appeal after payment, before commencing suit to recover the tax so collected. 14 Stat. 111, 152, § 19.

2. Where a savings institution, having a capital stock and reserve fund which are security for the deposits, receives deposits, loans the capital, reserve fund and deposits, and, after paying the expenses, sets apart a portion of the net earnings for the reserve fund, and divides the balance among the capital stock, reserve fund and deposits in proportion to the respective amounts and the time they have been drawing dividends, the moneys so paid to depositors are dividends within the meaning of the section 120 of the internal revenue act, and not interest within the meaning of the proviso to that section, and are subject to five per cent. tax. 14 Stat. 138.

The plaintiff had a capital stock of $500,000, and a reserve fund of about $300,000, both of which are security for deposits. It receives deposits, and the capital stock, reserve fund and deposits are loaned out mainly but not wholly on real estate securities; and all the interest received is divided substantially as follows: In January and July of each year the board of directors ascertain the earnings during the preceding six months. After deducting therefrom the salaries and other expenses during that time, a portion, not exceeding ten per cent. of the net earnings, is set apart and credited to the reserve fund, and the remainder forms a dividend which is declared and paid upon the capital stock, reserve fund and deposits. The dividends payable to depositors are calculated according to the amount of the deposit, and the time of its continuance after it begins to draw dividends. But if the deposit is withdrawn between dividend days, a low rate of interest, fixed by the directors, is allowed in lieu of dividends. On July 8, 1870, the board of directors of plaintiff ascertained in this manner the net earnings for the six months ending June 30, 1870, and after deducting five per cent. to be added to the reserve fund, declared a dividend of eleven per cent. per annum on the capital stock, reserve fund and deposits, and made said dividends payable on July 10, 1870, and they were paid without deducting any tax, under section 120 of the internal revenue act [of 1866 (14 Stat. 138)], from the dividends so paid to depositors. September 20, 1870, the assessor of internal revenue for the proper district, under the provisions of said section, assessed the plaintiff five per cent. on said dividends, amounting to $17,647, which said assessment

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]
2 [Reversed in 22 Wall. (89 U. S.) 38.]

was duly listed and certified to [L. Cary] the collector of the district. Said defendant, as such collector, on the twenty-seventh of November, 1870, demanded payment of said tax, and upon refusal by plaintiff, threatened, and was about to seize and sell the property of plaintiff to satisfy said tax, whereupon plaintiff paid the same under protest, and subsequently demanded re-payment, which was refused. After the said assessment and before payment, the plaintiff duly appealed from the assessment to the commissioner of internal revenue. The commissioner decided against the plaintiff, and this suit was commenced to recover the said sum, within six months after the decision of said appeal. No appeal was taken after payment.

Jarboe & Harrison and Tilden & Wilson, for plaintiff.

L. D. Latimer, U. S. Dist. Atty., for defendant.

SAWYER, Circuit Judge. The first point made by the defendant is, that the suit was prematurely commenced, on the ground that an appeal must be taken to the commissioner after payment before suit brought. 14 Stat. 111, 152, § 19, and regulations prescribed by the secretary of the treasury.

But an appeal was taken from the assessment before payment, and decided against plaintiff. This I think sufficient. There could be no object in appealing a second time to the same officer in the same cause, and upon precisely the same question. The commissioner had already decided the identical question, and the object of the law was accomplished in the first appeal.

The next question arises under section 120 of the internal revenue act as amended in 1866. The plaintiff insists that the said sums paid to depositors are interest paid to depositors within the meaning of the proviso, and not dividends within the meaning of the term as used in the body of the section. The body of the section, so far as it affects the question, is as follows:

"There shall be levied and collected a tax of five per centum on all dividends * * * declared due * * * and * * * payable to depositors * * * as a part of the earnings, income or gain of any * * * savings institutions; * * * and said * * * savings institutions * * * are hereby authorized to deduct * * * from any dividends or sums of money that may be due and payable as aforesaid, the said tax. * * * And a list or return shall be made * * * on or before the tenth day of the month following that on which any dividends or sums of money become due or payable as follows: 'Provided: * * * the annual or semi-annual interest allowed or paid to the depositors in savings banks or savings institutions "shall not" be considered dividends.'" 14 Stat. 138.

It was certainly contemplated by the provision in the body of this act to tax some-

thing as dividends in the hands of "savings institutions," for they are expressly named. What is it that is to be taxed? The act says: "Dividends * * * declared due * * * and * * * payable to depositors * * * as part of the earnings, income, or gains of any savings institutions." The only income, earnings or gains of the plaintiff were the moneys before mentioned, and these moneys were the very earnings, income and gains, and the only ones which the plaintiff either could, or did, in fact, divide and declare "due and payable to its depositors." They clearly come within the express terms of the act, and nothing else belonging to plaintiff or arising in its business does come within the terms. But plaintiff says, conceding this to be so, yet these payments are interest, and nothing else, as a rate per cent. is ascertained depending upon the amount of earnings, and then the amount to be paid found by calculating the sum to be paid upon the amount deposited for the time it has been on deposit, after beginning to draw interest at the rate per cent. fixed, and that this constitutes interest, notwithstanding the rate per cent. is determined by the amount of earnings; that it is compensation paid for the use of money; that being interest allowed depositors, it is by the express terms of the proviso taken out of the general definition of the term dividends, as it would be otherwise construed in the body of the act. In other words, that the act itself in the proviso limits by express definition the term dividends as used in the body of the section, by saying this interest shall not be considered dividends as the word is there used. It is not apparent to what the term "dividends payable to depositors" could apply, if not to these earnings. On the other hand, it is suggested that there are, or may be, cases where interest in the strict sense of the word is paid to depositors upon which the words of the proviso may operate; that in some savings institutions in the United States an option is given to their depositors to take a pro rata share of the earnings, that is to say, dividends, or to take a fixed rate of interest without regard to earnings, whether great or small; and that there are different classes of depositors in some institutions, some of whom are entitled to share pro rata in the earnings, and others only to receive a low rate of interest, irrespective of profits or earnings, and that the proviso is intended to apply to those who thus elect to take interest, or who are only entitled to receive interest instead of sharing in the profits. It is also claimed that those in this company, who draw their deposits between dividend days, and are only entitled to a low rate of interest in lieu of dividends, are within the proviso.

The cases suggested may, perhaps, be within its provisions; but, however that may be, or whatever cases the proviso may be intended to cover, I am satisfied that the sums in question are not within the exception. Interest is the sum paid by the party having or

using the money to the owner for its use. It is paid at some specific rate per cent., fixed either by the law or the terms of the contract, without any regard to the profits derived from its use, by the party paying the interest. The rate is fixed, specific, not contingent. In the case in hand the plaintiff is not the party using or paying for the use of the money. It is, substantially, a simple agent entrusted with the capital stock, reserve fund and deposits, to loan out to individuals on interest. There is no interest or dividends, unless the money is so loaned, and the amount divided depends wholly upon the amount so loaned out and profits earned. The parties to whom it loans are the borrowers, and they pay interest. The expenses of the management are first paid out of the earnings, and the net earnings or profits of the transactions are divided among the various owners of the funds loaned, and not upon a fixed specific rate per cent. previously ascertained by law, or by the terms of the contract. It is simply all divided, be it more or less, in proportion to the amount deposited by each, and the time it has been on deposit. It is not paid for the use of the money lent, but divided as profits. The amount divided depends wholly upon the amount earned and the expenses. Rate per cent. cuts no figure as a necessary element in the case. It is not an element in the contract between the plaintiff and the depositor. The ratio or rate per cent. is only ascertained and introduced as a mere matter of calculation, for the purpose of ascertaining what part of the sum to be divided is to go to each party. The elements to be considered in the distribution are the amounts entitled to dividends, the time and the earnings less expenses. The rest is simply arithmetical calculation. If this does not strictly constitute dividends, it will be difficult to say what does. On any other view the exception in the proviso would be as broad as the provision in the body of the section, and be void for repugnancy, or would nullify the act. The body of the section, although changed as to the phraseology, is, substantially, identical with the language before the amendment, so far as saving institutions are concerned. The only object of the amendment as to these institutions seems to be to make the exception in question in the proviso. If it was intended to give the exception the construction claimed by plaintiff, the obvious and natural way of making the amendment would be to strike the words "savings institutions" from the body of the act. This would be all that is necessary. But, instead of doing this, congress retained these words, and then adopted the awkward expedient of nullifying the provision by means of the proviso. It seems absurd to suppose that congress would adopt this mode of accomplishing the object indicated by the interpretation insisted on by plaintiff. I think the money in question dividends, within the provision of the body of the act, and not interest within the meaning of the proviso.

[3] [The next point is, that this tax is not a tax upon the savings institution, but upon the income of its depositors; that the savings institutions are only agents for its collection and payment, and that, at the time these dividends were declared, made payable, and paid, there was no law imposing the tax, in the hands of the plaintiff, or requiring plaintiff to withhold it from the depositors, and pay it over to the collector of internal revenue; that the tax is a tax levied upon the income of the individual depositors, under section 116 of the act [supra], to be collected and paid over by the savings institutions, and not a tax upon the institutions themselves, seems to necessarily follow from the decision of the supreme court in Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 269. Mr. Justice Strong, on the circuit, elaborately examines the various sections of the statute, and reaches a similar conclusion in Philadelphia & R. R. Co. v. Barnes [Case No. 11,087]. He further holds that, under section 119, this income tax, the collection of which is provided for in section 120, as well as those provided for in other sections, was not to be continued after December 31, 1870, although the tax for the income of 1869 was to be levied and collected in 1870; that the various companies mentioned are merely government agents, upon whom the duty is imposed of collecting and paying the tax to the government; that between December 31, 1869, and July 14, 1870, there was no law in force imposing said tax, or requiring said companies to collect and pay it over; that the act of July 14, 1870 [16 Stat. 256], declaring that the said former act should be construed to extend the tax till August 1, 1870, while it might impose a tax upon said individual incomes, it did not act retrospectively, so as to affect transactions which, in the meantime, had been closed, and wherein the rights of parties had become fixed, or make wrongful acts of said companies which were proper when performed; and that they were not liable for the dividends declared and paid in the meantime, and before the passage of said act of July 14, 1870. The same question was determined in Home Mut. Ins. Co. v. Stockdale [Case No. 6,662]. The dividends now in question accrued, were declared, and made payable after January 1, and before July 14, 1870, and were accordingly paid by the plaintiff without deducting the tax. Under these authorities, this was rightfully done, there being no law at the time imposing the tax, or requiring plaintiff to collect and pay it over. The rights of the parties, as between the plaintiff and depositors, became fixed when the dividends became payable, on July 10, 1870. After that, the plaintiff had no means of collecting the tax. The deposits themselves, as well as the dividends, may have been withdrawn. At all events, the transactions, with respect to those dividends, as between the plaintiff and

---

[3] [From 17 Int. Rev. Rec. 109.]

the depositors, were closed. If the act of July 14th, imposed the tax upon these dividends, it was after they had passed beyond the control of plaintiff, and it was too late for the company to collect it.

[On July 14, 1870, the date of the passage of the declaratory act, it was income in the hands of the depositors, and, as it was not then within the exception of "income received from institutions or corporations whose officers are required by law to withhold a per centum of the dividends made by such institutions, and pay the same to the officers authorized to receive the same," under section 117, it was taxable, under other provisions of the act, if rendered taxable at all by the said declaratory act of July 14th, in the hands of depositors only, and not in the hands of the plaintiff, from whose control it had already passed. Says Mr. Justice Strong, in the case already cited: "It was their [the plaintiffs'] right as well as their duty, to pay over the entire dividend to the stockholders who had then acquired a vested right in it, and the plea of the defendants does not aver that the whole dividend was not at once thus paid over. Then the distress which the plea attempts to justify was made to enforce the performance of a duty that has no existence. It was substantially an attempt to enforce a penalty upon the plaintiffs for an omission to do that which they had no right to do, a penalty equal to the amount of a five per cent. tax with an additional five per cent. thereon. It is to be remembered that the tax is levied upon the shareholders, and that the company is merely the governmental agent to collect it. Its liability to a distress, if any there be, arose out of an unlawful failure to collect the tax and pay it over. But the failure was not unlawful at the time. Surely it will not be maintained that the declaratory act of 1870 can be regarded as operating retrospectively, to make the act or omission of the plaintiff unlawful, and punishable as an offence, when the act or omission was innocent at the time when it occurred. Were it conceded that the construction given by congress is binding in all cases where it would not disturb vested rights, or operate practically as an ex post facto law, it is not to be presumed it was intended for application to such a case as the present." It necessarily follows from this view that the assessment of this tax against, and collection from, the plaintiff was made without authority of law. The effect would be to impose a penalty upon the plaintiff for not doing an act which, at the time it could have been done, was not required by law, and which it had no authority to do.

[As to the one twenty-fourth of one per cent. assessed and collected under the 110th section of the internal revenue act (14 Stat. 136), the facts are substantially the same as in the case of German Saving & Loan Soc. v. Oulton [Case No. 5,362], decided in this court by Mr. Justice Field, in September, 1871. On the authority of that case, I hold that this tax was also collected without authority of law. Let judgment be entered for plaintiff.] 3

[On appeal to the supreme court, the judgment of this court was reversed. 22 Wall. (89 U. S.) 38.]

German Saving & Loan Soc. v. Cary. San Francisco Savings Union v. Oulton. San Francisco Savings Union v. Cary, are similar cases, and decided in the same way.