## NEW ORLEANS v. PAINE.

APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE FIFTH CIRCUIT.

No. 1154. Submitted January 4, 1893. — Decided January 16, 1893.

While the location of the boundary lines of a land grant is pending before the Land Department, and the proper officers are bringing to bear upon it their own judgment and discretion, the courts have no right to interfere with their action by injunction.

The general rule is that the judicial power will not interpose, by mandamus or injunction, to limit or direct the action of departmental officers in respect of matters pending, within their jurisdiction and control.

THIS was a bill in equity filed in the Circuit Court for the Eastern District of Louisiana, by the city of New Orleans, suing as residuary legatee under the will of John McDonough, deceased, against the deputy surveyor general of the United States for the State of Louisiana, to enjoin him from surveying and locating a new back line or rear boundary of a French grant, and from dividing into sections lands alleged to belong to the plaintiff north of, and contiguous to, such new back line.

The grant in question was made April 3, 1769, by the proper authorities of the Province of Louisiana, then an appanage of the French crown, to Pierre Delille Dupard, and was described as "thirty arpents of front to the river, upon the whole depth which shall be found unto Lake Maurepas, of the land where heretofore were two villages of the Collapissas savages," etc. Upon the acquisition of the Territory of Louisiana by the United States, under the treaty of 1803, the greater part of this grant was confirmed to John McDonough, Jr. & Co., and was described by the board of land commissioners as having "thirty-two arpents front on the Mississippi River, with a depth as far as the Lake Maurepas, with side lines diverging as they extended into the interior," etc. McDonough having purchased the interest of his partner, devised his portion of the grant, upon certain charitable uses, to the cities of New Orleans and Baltimore, and upon partition made be-

tween the said devisees, the lands described in the bill fell to the plaintiff. In due course the government surveyed and fixed the front and side lines of the grant, but it seems that neither of these lines touched Lake Maurepas, nor was it included between them. When, in 1885, the State of Louisiana, claiming adversely to the city of New Orleans under the swamp land grant of March 2, 1849, 9 Stat. 352, c. 87, raised the question before the General Land Office as to what *depth* the claims were entitled, the surveyor general of Louisiana, to whom the matter had been referred, decided that the grant should extend to Lake Maurepas and the Amite River, by extending its lower side line back to said water boundary. On appeal to the Commissioner of the General Land Office, the decision of the surveyor general was affirmed; but on further appeal to the Secretary of the Interior, Mr. Lamar, he decided on January 6, 1888, that the depth of the grant should be determined by a straight line drawn through the centre of the grant from the front to the rear, terminating at the point of intersection of a line drawn at right angles thereto, so as to touch the lowest point of the southern shore of · Lake Maurepas.

The matter was referred to the surveyor general of Louisiana, who directed the defendant Paine, as deputy surveyor, to examine carefully the southern shore line of Lake Maurepas, and, if entirely satisfied from reliable evidence, that there had been a change in said shore line since the grant was made in 1769, he was to run the line according to such location, and not according to its then location. These instructions were approved by the Commissioner of the General Land Office, under date of March 4, 1890. The defendant, the deputy surveyor, proceeded under these instructions, and satisfied himself that the southern shore line of Lake Maurepas had, for an indefinite time, been a moving line, slowly extending itself south and southwest; but as to where the shore line was in 1769, he could form no definite conclusion. "The only thing which seemed certain is that it was a long way from where it now is, and in fixing upon the distance . . . . I have tried to adopt a location which would probably give the

claims all the depth they are entitled to without extending them so far as some of the evidence would require." The bill averred that this survey was approved by the surveyor general, and was forwarded to the Commissioner of the General Land Office, "and thereupon, and in due official course, the said surveys of the said R. B. Paine were duly paid for by the United States, including his said survey and location of said back line of said Dupard grant."

This survey seems, however, never to have been formally approved, and on May 14, 1891, Mr. Chandler, then acting Secretary of the Interior, wrote to the Commissioner of the General Land Office, saying that he found nothing in the decision of the department of January 6, 1888, to indicate that it was the intention of the Secretary to authorize an investigation as to whether the shore of the lake had been changed since 1769; but, on the contrary, it seemed to be clearly indicated that the southern shore of the lake, as it now exists, should be fixed absolutely as the starting point and determine the back line of the said grant. "You will instruct the surveyor general accordingly." In pursuance of this, the Commissioner of the General Land Office instructed the surveyor general to enter into a new contract with some competent deputy for the establishment of the back line from the southern shore of the lake as it now exists, and thereupon a new contract was entered into with the defendant Paine for a resurvey upon the basis of such instructions. Thereupon plaintiff filed this bill to enjoin such resurvey.

A restraining order was issued upon the filing of the bill, and a day fixed for the hearing of the motion for an injunction. A demurrer being filed to the bill, the case was brought to a hearing upon bill and demurrer, and a decree entered denying the injunction and dismissing the bill. 49 Fed. Rep. 12. From this decree an appeal was taken and allowed to the Circuit Court of Appeals, by which court the decree of the Circuit Court was affirmed and an appeal allowed to this court. 2 U. S. App. 330.

*Mr. J. L. Bradford* for appellant.

*Mr. Assistant Attorney General Maury* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This case turns upon the power of the court to enjoin the action of an officer of the Land Department in relocating the boundaries of a land grant; and an injunction is demanded upon the theory that a former survey of the same line had been examined, approved and paid for, and that the rights of the plaintiff to the lands included in such survey had thereby become vested.

In *Noble* v. *Union River Logging Railroad*, decided at the present term, (*ante* 165,) we had occasion to examine the question as to when a court was authorized to interfere by injunction with the action of the Head of a Department, and came to the conclusion that it was only where, in any view of the facts that could be taken, such action was beyond the scope of his authority. If he were engaged in the performance of a duty which involved the exercise of discretion or judgment, he was entitled to protection from any interference by the judicial power. In that case it appeared that the only remedy of the plaintiff was to enjoin the Secretary of the Interior from revoking his approval of a certain map, which operated as a grant of land. His contemplated action amounted in effect to the cancellation of a land patent.

So, in this case, if it were made to appear that the former survey had been completed and approved in such manner that all the lands included within the lines of the former survey had become vested in the plaintiff, it is possible that it might be entitled to an injunction against any act which would have the effect of disturbing or unsettling a title thereby acquired. But the difficulty here is that the facts do not exhibit such a case. It appears that the first survey was made under the direction of the surveyor general, who was himself acting under instructions from Mr. Lamar, then Secretary of the Interior, which instructions in his opinion authorized him to direct the defendant Paine to ascertain the shore line of Lake Maurepas as it existed in 1769, the date of the grant; and his

instructions to defendant, which were most careful and explicit as to the method of locating this line, were found to be satisfactory by the Commissioner of the General Land Office, who also approved his contract with the defendant for the survey upon the basis of these instructions. Defendant proceeded to act upon these instructions, and to locate the line as near as he could ascertain the southern shore of the lake to have been in 1769. His report of this survey seems to have been forwarded to the Commissioner of the General Land Office, but never to have been formally approved.

The only record evidence upon this subject consists of three letters: One from the Commissioner of the Land Office to the surveyor general, of January 23, 1891, in which he acknowledges the receipt of the duplicate plat and transcript of field-notes of defendant's survey, and also of certain protests, affidavits and letters, and in closing his correspondence says: "In view of the foregoing and of the condition expressed in the contract allowing partial payments as the survey progresses, I hereby accept the survey as far as herein considered, and, as the several points of objection to the acceptance of some of the lines established in this survey, as set forth in the protests above mentioned, will necessarily demand a further consideration by this office, you are directed to withhold the filing of the triplicate plats in the local land office until you are further advised in regard thereto." The second letter is from the acting Secretary of the Interior to the Commissioner of the General Land Office, under date of May 14, 1891, in which, speaking of the decision of Mr. Lamar, the former Secretary of the Interior, he says: "I find nothing in this decision to indicate that it was the intention of the Secretary to authorize an investigation as to whether the shore of the lake had been changed since 1769; but, on the contrary, it seems to be clearly indicated that the southern shore of the lake as it now exists should be fixed absolutely as the starting point to determine the back line of said grant. You will instruct the surveyor general accordingly." This letter does not indicate, as contended, a reversal of the action of Mr. Lamar, his predecessor in office, but merely that he put a different interpreta-

tion upon his decision from that of the surveyor general, under whose instructions the defendant had acted. The last letter was written by the acting Commissioner of the Land Office to the surveyor general, May 21, 1891, and states that "this line was run by Deputy Surveyor Ruffin B. Paine, under his contract No. 1, dated November 11, 1889, under instructions of your predecessor, and *was accepted by this office to the extent of payment for the work*, it having been done in accordance with his instructions; but *the plats were withheld from filing awaiting the decision of the department* as to the correctness of the instructions, in view of the original decision of the department in this case, dated January 6, 1888. It is unnecessary to enter into the details of the instructions issued by your predecessor, or of the work performed by his deputy in pursuance thereof, as they form a part of the files of your office and you are no doubt familiar with them. It is sufficient to state that the enclosed decision directs that the southern shore of the lake as it now exists shall be fixed absolutely as the starting point to determine the back line of the aforesaid claims. This necessitates the rejection of the survey executed by Paine as to the establishing of this line, and you will enter into a new contract with some competent deputy for its establishment as now directed by the department."

It is quite evident from this correspondence that the first survey was never formally approved by the Secretary of the Interior or the Commissioner of the Land Office, and that no title ever vested in the plaintiff to the lands included in this survey, though defendant, having obeyed his instructions, was, of course entitled to his pay. If the department was not satisfied with this survey, there was no rule of law standing in the way of its ordering another. Until the matter is closed by final action, the proceedings of an officer of a department are as much open to review or reversal by himself, or his successor, as are the interlocutory decrees of a court open to review upon the final hearing. *Fourniquet* v. *Perkins*, 16 How. 82. Thus in *Gaines* v. *Thompson*, 7 Wall. 347, 352, it was held that the action of the Secretary of the Interior directing the Commissioner of the Land Office to cancel an entry of land was within

the exclusive control of the department, and that the court had no jurisdiction or authority to interfere with the exercise of this power by injunction. In delivering the opinion of the court, Mr. Justice Miller stated the general doctrine to be "that an officer to whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action."

The case under consideration is not unlike that of *Stotesbury* v. *United States*, 146 U. S. 196, decided at the present term, in which a decision by the Commissioner of Internal Revenue authorizing the refunding of certain taxes, which was reported to the Secretary of the Treasury for his consideration and advisement, was held by the court not to have been a final decision, but to have been subject to a revision by the Secretary. Obviously the decision of the surveyor general approving the act of his deputy was not a finalty, since the papers were forwarded by\ him to the Commissioner of the Land Office, and by him to the Secretary of the Interior for final approval. So long as there was a superior officer whose approval was contemplated by law or the regulations of the department, no approval by a subordinate officer would operate as a finalty. In this particular the case is readily distinguishable from that of *United States* v. *Stone*, 2 Wall. 525, in which the Secretary of the Interior attempted to annul the action of his predecessor in issuing certain land patents, by revoking them. It is not at all improbable that the proper location of the back line of this grant may hereafter become the subject of judicial inquiry, but at present, while the matter is still pending before the Land Department and the officers are bringing to bear upon it their own judgment and discretion,

we have no right to interfere with their action by injunction. This case is within that large number cited in *Noble* v. *Union River Logging Railroad*, in which it was held that the judicial power will not interpose by mandamus or injunction to limit or direct the action of departmental officers in respect to pending matters within their jurisdiction and control.

The decree of the Court of Appeals affirming the decree of the Circuit Court dismissing the plaintiff's bill is, therefore,

*Affirmed.*