AMERICAN SCHOOL OF MAGNETIC HEALING v. McANNULTY.

(Circuit Court, W. D. Missouri, W. D.   June 14, 1900.)

**1. AUTHORITY OF POSTMASTER GENERAL.**

Under 26 Stat. 466, giving the postmaster general authority, on evidence satisfactory to him that any person or company is engaged in conducting any scheme or device for obtaining money through the mails by means of false pretenses, to direct postmasters to return to the sender all letters or other matter directed to such person or company, an order by the postmaster general directing all letters addressed to the complainants to be returned to the senders is not in excess of his authority.

**2. SAME—RIGHT TO USE THE MAILS—PROPERTY.**

The right to use the mails is a statutory privilege, and not property in the constitutional sense, and hence an act of congress giving the postmaster general authority to determine whether a person has forfeited the right is not obnoxious to the constitution, inasmuch as it does not deprive him of his property without due process of law, or subject him to punishment for an offense.

**3. SAME—ARBITRARY POWER—JURISDICTION OF COURT.**

The mere fact that the power conferred on the postmaster general by 26 Stat. 466, giving him authority to order all mail directed to parties engaged in any scheme to obtain money through the mails by false pretenses to be returned to the senders, is an arbitrary power, and may be abused, does not justify a court in assuming to control its exercise.

Harkless, O'Grady & Crysler (F. N. Judson and David Overmyer, on the brief), for complainants.

William Warner, U. S. Atty., and Edward A. Rozier, U. S. Atty., for defendant.

THAYER, Circuit Judge.   On May 15, 1900, the postmaster general, in pursuance of section 2 of an act of congress approved September 19, 1890 (26 Stat. 466, c. 908), and by authority of section 4 of another act approved March 2, 1895 (28 Stat. 964, c. 191), directed J. M. McAnnulty, the defendant above named, who is postmaster at Nevada, Mo., to return to the senders thereof "all letters, whether registered or not," which arrived at said office addressed to the above-named complainants, and to stamp thereon the word "Fraudulent," or to transmit said letters to the dead-letter office at Washington, D. C., to be disposed of as other dead matter, under the laws relating thereto, when there was nothing on said letters to indicate who were the senders of the same.   This order contained a finding by the postmaster general, in accordance with the acts of congress above mentioned, that it had been made to appear upon evidence satisfactory to him that the American School of Magnetic Healing, S. A. Weltmer, the president thereof, and J. H. Kelly, its secretary, were engaged at Nevada, Mo., in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises.   A bill of complaint was thereupon filed by the complainants herein, they being the same persons whose mail was interrupted by the aforesaid order, the object of said bill being to obtain an injunction restraining the postmaster at Nevada from obeying said order.   A rule to show cause why a temporary injunction as prayed for should not be awarded has been duly issued and served, and the question to be determined at this time is whether the com-

plainants, on the showing made, are entitled to the interlocutory relief prayed for.

Counsel for the complainants concede that it has been settled by at least two decisions of the supreme court of the United States (Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877; In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, 36 L. Ed. 93) that under the power conferred upon the legislative branch of the government to establish post offices and post roads, congress has full control of the entire postal system of the country, and may lawfully determine what shall and what shall not be carried in the mails, and that the judicial branch of the government has no right to override or interfere with the will of congress on that subject. They also concede the elementary proposition that whenever, for the purpose of executing the laws, an executive officer is vested by congress with discretionary powers, the courts can neither interfere by mandamus nor by injunction with the exercise of such powers. Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62; Stotesbury v. U. S., 146 U. S. 196, 13 Sup. Ct. 1, 36 L. Ed. 940; Mississippi v. Johnson, 4 Wall. 475, 18 L. Ed. 437; City of New Orleans v. Paine, 147 U. S. 261, 13 Sup. Ct. 303, 37 L. Ed. 162; Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123. Notwithstanding these concessions, it is claimed, however, that in the present instance the postmaster at Nevada may be lawfully enjoined from obeying the order of his superior officer, and this contention appears to be based mainly on two grounds: First, that the order under which the postmaster is acting is void because the postmaster general exceeded his authority under the statute in directing the return of "all letters, whether registered or not, and other mail matter"; and, second, that it is void because the statute under which the postmaster general acted attempts to devolve on that officer powers which cannot be lawfully exercised by an executive officer. The language of the statute (26 Stat. 466) on which reliance is placed to sustain the first of these propositions is as follows:

"The postmaster general may, upon evidence satisfactory to him that any person or company is engaged in conducting any lottery, gift enterprise, or scheme for the distribution of money, or of any real or personal property by lot, chance, or drawing of any kind, or that any person or company is conducting any other scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, instruct postmasters at any office at which registered letters arrive directed to any such person or company or to the agent or representative of any such person or company * * * to return all such registered letters to the postmaster at the office at which they were originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof."

By the fourth section of the act of March 2, 1895, the powers conferred upon the postmaster general by the statute last quoted were extended to and made applicable "to all letters or other matter sent by mail."

It is manifest from an inspection of these statutes that congress has in express terms conferred upon the postmaster general the power to prohibit the delivery of any and all mail matter to a person whom that officer, after a due investigation, finds to be engaged in conducting through the mails either a lottery or a scheme to obtain money by

false and fraudulent pretenses; and it is doubtless true that it intended to confer that power because of the difficulty which would generally be experienced in separating lawful mail matter from that which is unlawful, if the postal department was only authorized to withhold and return such letters as relate to the unlawful business in which a party is found to be engaged. Congress did not deem it expedient to cast on the post-office department the duty of making an inquiry or finding as to the character of every letter which was suspected to be nonmailable, when evidence was adduced which satisfied the postmaster general that the party addressed was using the mails for the purpose of conducting a lottery, or to obtain money by fraudulent representations. The first ground of objection to the order, namely, that it is too comprehensive in its terms, is untenable, and must be overruled.

In support of the second and most important objection to the order of the postmaster general it is urged, in substance, that the right of a citizen to make use of such facilities as the post-office department at any time affords for the transportation of mail matter is property, within the meaning of that word as used in the fifth amendment to the federal constitution; that the acts of congress aforesaid, under which the postmaster general derived his authority to issue the order in controversy, devolve on that officer the power to hear evidence, and to determine in the light thereof whether a person is engaged in a scheme to defraud; that, as the result of such an adjudication, a citizen may be deprived of his property by a proceeding before an executive officer which is essentially of a judicial character; and that such a power cannot be devolved upon an executive officer consistently with our theory of government. In other words, the second objection to the order of the postmaster general necessarily involves the proposition that the statute under which he acted is in violation of the federal constitution, and for that reason void. The same propositions, in substance, were presented to the circuit court of appeals for the Sixth circuit in Association v. Zumstein, 15 C. C. A. 153, 67 Fed. 1000, and were by that court held to be untenable. An attempt is made, however, to distinguish the case at bar from the case last cited because of the fact that in the latter case the complainants were alleged to be conducting a lottery, while in the case in hand the complainants were charged with using the mails to obtain money by false pretenses. It is said arguendo that, although it may be that congress can lawfully empower the postmaster general to determine whether one is engaged in conducting a lottery, yet the determination of the question whether one is engaged in a scheme to defraud is a different and more difficult inquiry, involving, as it does, a decision of mixed questions of law and fact, and that the power to decide questions of that nature, when a property right is involved, belongs exclusively to the judiciary, and cannot be delegated to an executive officer. The court is of opinion, however, that the reasons thus advanced for the purpose of avoiding the force of the decision in the Sixth circuit are unsound. It is sometimes more difficult to analyze business ventures in which persons are engaged, and determine whether they involve the essential features of a lottery, than it is to determine, with respect to other enterprises in

which men may become engaged, whether they are schemes to defraud. In either case the officer exercises the same quasi judicial functions which have been exercised by the various executive departments since the foundation of the government, in that he hears proof and decides issues of fact as well as questions of law. The power exercised, and the consequences of its exercise, are in each instance the same. Therefore, if it be true, as counsel for complainants seem to concede, that the postmaster general may lawfully determine whether persons are conducting a lottery, and deprive them of the use of the mails for that reason, it must be equally true that he may be empowered to determine whether persons are making use of the mails in furtherance of a scheme to defraud.

The questions at issue in this case were also elaborately considered by the supreme court of the District of Columbia in Dauphin v. Key, 11 D. C. 203. The decision in that case arose under section 3929 of the Revised Statutes, prior to the amendment thereof on September 19, 1890 (26 Stat. 468, c. 908, § 2). Construing that section of the Revised Statutes, which then, as now, authorized the postmaster general to withhold and return mail matter which was addressed to persons who were found to be engaged in conducting lotteries or schemes to defraud by the use of the mails, the court held, for reasons which commend themselves to this court as entirely sound, that the right which may at any time be accorded to a citizen by existing laws to use the mails for the transmission of mail matter is a mere privilege created by legislative enactment, which may be modified or withdrawn by the same authority that created it, and that the privilege in question is not property in the constitutional sense, of which one may not be deprived except in accordance with the judgment of some judicial tribunal or by due process of law. It was further decided in the same case that the statute was not intended to, and that it did not in fact, empower the postmaster general to inflict punishment for a wrongful or criminal act. It was conceded by the court that a power to convict and punish a person for an offense could not, as a matter of course, be devolved upon an executive officer, but it was said of the legislation in question that it was not punitive in its character, but preventive, the sole object being to prevent the misuse of the mails, and to arm the head of the postal department with a power which would be adequate to accomplish that object. It is hardly necessary to observe that, if the right to use the mails is a statutory privilege, and not property, within the meaning of the fifth amendment to the federal constitution, then no fault can be found with the statute now under consideration, because it devolves on the postmaster general the duty of ascertaining by satisfactory evidence if one is using the mails to defraud, and makes his right to use the mails dependent upon that finding. Congress has the right to exclude from the mails every species of mail matter that, in its judgment, ought not to be carried therein; and when it determines, as it has done, that persons who are employing the mail for the purpose of conducting lotteries or schemes to defraud shall not be allowed to receive their mail, it can authorize an executive officer of the postal department to determine the fact on which the right to receive mail depends by any appropriate method

of procedure, inasmuch as such determination of the fact does not, under the operation of the law, deprive the party concerned of his property, or subject him to punishment for an offense, within the meaning and intent of the organic law.

On the hearing of the motion for a temporary injunction much stress was laid in argument on the fact that the power conferred on the postmaster general is of an arbitrary character, and, if erroneously exercised at any time, is liable to occasion great loss and inconvenience to the citizen. On this ground a strong plea was made that the courts should, if possible, so construe the statute as to enable them to control the exercise of the power in question by reviewing the decision of the head of the post-office department, in whom the power has been lodged. In answer to this suggestion it is sufficient to say that, in whosoever hands power is lodged, whether in the judicial or executive branch of the government, it is liable at times to be abused, or erroneously exercised; and the fact that a particular authority may be abused is in itself no reason why a court should assume a jurisdiction to control its exercise which does not of right belong to it. Moreover, if the action of the postmaster general was liable to be arrested on any and every occasion where a party complaining of his action sees fit to appeal to the courts, it is probable that the statute would not afford as efficient means for preventing the misuse of the mails as congress intended it to afford. But, be this as it may, the court is satisfied that it cannot lawfully grant a temporary injunction. The motion to that effect is accordingly denied, and the rule to show cause why a temporary injunction should not issue is discharged.