Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court.
The plaintiff filed a petition in this court claiming the sum of $4,500.13, which, it is alleged, the plaintiff was illegally or wrongfully required to pay to the collector of internal revenue as an excise tax, with interest and penalty thereon, under , the provisions of the act of August 5, 1909, 36 Stat., 112.
*27 The facts show that the tax was assessed against plaintiff in May, 1913, for the doing of corporate business during the year 1912. In July, 1913, the plaintiff applied to the Commissioner of Internal Revenue for an abatement of the tax, which application was denied in December, 1913. Shortly thereafter the tax was paid. After making the payment the plaintiff did not present an appeal to the Commissioner for a refund of the tax, but brought its action in this court on the 15th day of December, 1915.
While contending that the plaintiff was liable to the tax and the collection was lawful, the defendant insists (1) that it is not shown that the tax was paid involuntarily or under protest, and (2) that the failure to present an appeal to the commissioner after payment for a refund of the tax is fatal to any right to maintain the action in this court. This last question is a material one in the present case and may be a recurring one in this court, involving, as it does, a condition under which actions of this kind are maintainable in the Court of Claims.
It is to be kept in mind that the Government can not be sued except by its consent.
The applicable statutes authorizing the remission, refund, and repayment of internal revenue taxes constitute sections 3220 at seq. of the Revised Statutes. The purpose of these sections is to afford a system of corrective justice whereby the taxpayer may secure relief, but when we look to them alone we do not find that they give a right of action against the Government. In some of their features there is a recognition of the right to sue the collector, while other features are applicable to suits in any court. But the remedy which they afford would be exclusive so far as concerns direct action against the Government, were it not for the fact that the Court of Claims is authorized to hear and determine claims founded upon any law of Congress. That power was a part of the jurisdiction conferred upon the court by the act creating it, in 1855, was carried into the Tucker Act of 1887, and into section 145 of the Judicial Code. The ground for jurisdiction in cases like the present one has been frequently stated by this coui’t, and is carefully examined in Judge Sanborn’s *28 opinion in Christie-Street Commission Co. v. United States, 136 Fed., 326. There seems to have been for a long time some question as to whether or not the sole remedy of the aggrieved party was not an action against the collector, but that question is no longer an open one. In United States v. Emery, Bird, Thayer Realty Co., 237 U. S., 28, in an opinion by Mr. Justice Holmes, it is said, in answer to the Government’s contention that the only remedy was a suit against the collector, that “ the least that can be said is that it would be adding a fifth wheel to the coach to require a circuitous process to satisfy just claims.” The taxes sought to be recovered in that case were assessed under the said act of 1909, and the court’s jurisdiction to hear and determine the claim was sustained because it was held that the claim was founded upon a law of Congress. Hvoslef case, 237 U. S., 1, 10.
Section 3220 authorizes the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, “ on appeal to him made,” to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount or in any manner wrongfully collected. Regulations have been prescribed by the Secretary and they have the force of law. Stotesbury case, 23 C. Cls., 285, affirmed in 146 U. S., 196. These regulations provide for an application to abate the tax, in part or in whole, the form to be used for that purpose being designated as Form 47. They also provide for applications under Form 46, where a refund of the tax is sought. Inasmuch as the statute authorizes the commissioner to “remit” the tax, it may be assumed that the regulations providing for an application to abate the tax find sufficient support in the authority granted to remit. No remedy, however, is provided in the event the commissioner erroneously refuses to remit or abate the tax. Section 3224 provides that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. The party assessed must accordingly pay the tax, and he may then appeal to the commissioner for the refunding of it. The statutes provide a system and regulate *29 the procedure to be taken. The initial step after payment is an appeal for the refund, and the commissioner is clothed with full authority to grant the relief. He may not only decide that the applicant is entitled to have the money paid back to him, but he is authorized, out of a permanent appropriation provided for the purpose, to make repayment. (Sec. 3689.) It may be observed that this power to effectuate the commissioner’s decision by payment without awaiting further appropriations by Congress is broader than the statutes, as they now exist, confer upon the Court of Claims, because the court’s judgments must await congressional appropriation before they can be satisfied. The statute thus creates a tribunal with full authority to investigate and pass upon the questions involved and requires an appeal to that tribunal in the first instance. By section 3226 suit in any court to recover the taxes is forbidden until the commissioner has been appealed to and has rendered his decision on the appeal. Section 3227 forbids suit unless brought “ within two years next after the cause of action accrued,” and (within the same period) section 3228 requires that all claims for a refunding of the tax shall be presented to the Commissioner of Internal Eevenue. There is a proviso to section 3226 providing that if the commissioner’s decision on the appeal is delayed for more than six months “ from the date of such appeal,” suit may be brought without first having his decision at any time within the period limited by section 3227, which, as has been said, is “ within two years next after the cause of action accrued.” The “ appeal ” mentioned in section 3226, which the commissioner must pass upon, is an appeal for the refunding of the tax, and, similarly, the expression “ such appeal ” in the proviso refers to the appeal to refund. Beading the several sections together, we find that section 3220 authorizes the commissioner to refund certain taxes on timely appeal to him therefor, while section 3226 forbids suit in any court until such appeal has been filed and the commissioner’s decision therein made, or until his decision has been delayed for at least six months. This statutory plan looking to the refunding of the taxes erroneously or illegally collected is designed to be simple, direct, *30 and expeditions. Bnt appeal for a refund to the statutory tribunal authorized to make it is essential. There can not be an appeal for a refund before the tax is paid, nor does-any cause of action accrue until payment of the tax.
Nor does the required appeal invoke a mere ministerial function. In United States v. Savings Bank, 104 U. S., 728, the Supreme Court held that the powers of the commissioner under section 3220 were not materially different from the powers granted by section 3426, construed in Kaufman's case, 96 U. S., 567, and said:
“An allowance by the commissioner in this class of cases is not the simple passing of an ordinary claim by an ordinary accounting officer, but a statement of accounts by one having authority for that purpose under an act of Congress. Until an appeal is taken to the commissioner no suit whatever can be maintained to recover back taxes illegally assessed or erroneously paid.”
In Lauer's case, 5 C. Cls., 447, decided at the December term, 1869, the petition was dismissed because the record failed to show that a decision of the commissioner had been made upon appeal for a refund. Similar action was taken in Stotesbury's case, 23 C. Cls., 285, affirmed in 146 U. S., 196. The appeal is from the collector’s action to a tribunal fully authorized to grant relief.
In Stewart v. Barnes, 153 U. S., 456, the court considered the original act from which sections 3226 and 3227 were taken, and said:
“Under either of those acts before an action could be maintained in any court an appeal must first have been made to the commissioner.”
Attention was called to the act of 1872, under which, if the commissioner delayed his decision for more than six months, “ the claimant was not compelled to await it, but might have sued within six months next following the six months of the commissioner’s delay, or one year from the time of appeal.” In Chesebrough's case, which was a suit against the United States, 192 U. S., 253, 262, it is said:
“ In Stewart v. Barnes, 153 U. S., 456, this court treated the language as providing for ‘ an appeal,’ and we think correetty.”
*31 And, further, it is said:
“ This petition did not set up any ruling of the collector, either specific or resulting from a demand to which petitioner yielded under protest or with notice, and from which he appealed to the commissioner, but averred that he ‘ made a written application’ to the commissioner to refund the amount he had paid. We do not say that this was not sufficient to justify action by the commissioner, but the averment as it stands is not equivalent to stating a previous adverse decision appealed from.”
But while section 3220 imposes a duty upon the commissioner to refund the tax on timely appeal when under the law it should be refunded, we do not find in that, or in the succeeding section, any authority to sue the United States in case of the commissioner’s erroneous refusal or failure to order the refund. Of course, if his action is favorable upon the appeal, there is no occasion for further remedy; but if his action be unfavorable and erroneous, the party seeking the refund would be remitted to his action against the collector but for the statute authorizing suits in this court for claims founded upon any law of Congress. The reasoning of the court in Medbury's case, 173 U. S., 492, 497, is applicable here:
“ The statute creates the right to have repayment under the facts therein stated, but it gives no remedy "for a refusal on the part of the Secretary to comply with its provisions. The person has the right under the act to obtain a warrant from the Secretary of the Interior for the repayment of the excess therein mentioned, and for the purpose of obtaining L he must make his application and prove the facts which the statute provides, and then the Secretary is to draw his warrant on the Treasury. This constitutes the right of the appellant. Applying for the warrant is not a remedy. When application for repayment is made there is nothing to remedy. He has not been wronged. A right of repayment of money theretofore paid has been given by the act, but it is only under the act that the right exists, and that right is to have the Secretary in a proper case issue his warrant in payment of the claim, and until he refuses to do so no wrong is done and no case for a remedy is presented. After the refusal the question then arises as to the remedy, and you look in vain for any in the act itself. We can not suppose that Congress intended in such case to make the decision of the *32 Secretary final when it was made on undisputed facts. If not, then there is a remedy in the Court of Claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided for in the act must be followed, and when the application is erroneously refused, the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right.”
Seeking to found its claim upon a law of Congress, it is necessary that the plaintiff show a compliance with that law. What the plaintiff in the instant case did was to apply to the commissioner for an abatement of the assessment, using for that purpose Form 47 prescribed by the regulation. That application was rejected. Thereafter the plaintiff paid the tax to the collector, and without securing a decision by the commissioner upon an appeal for a refund, and without invoking any action by him after payment, action was brought in this court nearly two years after the payment of the tax. The regulations prescribed by the Secretary provide for an appeal for a refund of the tax, and the use therefor of Form 46. The plaintiff, however, insists that the application for an abatement of the tax made and acted upon before payment met all the requirements of the statute in the matter of appeal to the commissioner, and he cites several cases in support of that position. San Francisco & Loan Society v. Cary, 2 Sawy., 333; Schwartzchild v. Rucker, 143 Fed., 656; Weaver v. Ewers, 195 Fed., 247; and De Bary v. Dunne, 162 Fed., 961. These were suits against collectors, and the opinions in the cases considered section 3226 in its bearing upon the suits in question. They do not refer to section 3220 in its connection with section 3226, nor in its relation to a suit against the United States. We are not concerned with what the rule shall be in suits against the collector, except as the rule may affect suits against the United States. These cases hold, however, that where it appeared that the taxpayer had applied to the commissioner for an abatement of the assessment and its application had been refused, he could bring suit against the collector after paying the tax without appealing to the commissioner for a refund of it. The reason for that conclusion as given in one of the cases *33 is: “ If the commissioner considers the matter on its merits on an application for an abatement of tax before payment, and decides that the tax has been properly assessed and should be collected, there could hardly be any necessity for appealing to him to refund it.” The necessity, however, for an appeal for a refund or the payment back of the tax is found in the fact that without it the plaintiff does not show a claim founded upon a law of Congress. It is section 3220 which gives recognition to the commissioner’s duty to refund “ on appeal to him made,” and it is compliance with that section which plaintiff must show, as well as an observance of section 3226 and the prescribed limitations.
In another of the cases mentioned (162 Fed., 961, 965) it is said:
“ Although the statute requires that there shall be an appeal taken to the Commissioner of Internal Eevenue before any suit can be maintained for a recovery of the tax paid, yet it is believed that the term ‘ appeal ’ is not used in the technical sense that there must be an appeal from the judgment of a lower tribunal to that of a higher for review or revision, but that the intendment of the statute is that the Commissioner of Internal Eevenue shall be appealed or applied to in some l'egular way, and his decision had, as a condition to the prosecution of such suit or action.”
And hence it was said that the claim or abatement was “ tantamount to an appeal to the Commissioner of Internal Eevenue under the statute.” But this view of the meaning of the term “ appeal ” seems to us to be contrary to that of the Supreme Court in Stewart v. Barnes and the Chesebrough, case, supra.
It is doubtful whether under our system it can properly be assumed that one and the same person will pass upon the two classes of appeals. The point is illustrated by Stotesbury's case, in 146 U. S. 196, affirming 23 C. Cls. 285. In that case there was an application to refund. Under the regulations prescribed by the Secretary, where the amount involved exceeded $250, the appeal, before it was finally decided, was required to be transmitted by the commissioner to the Secretary of the Treasury for his consideration and *34 advisement. The commissioner, having examined the claim, transmitted the same to the Secretary along with other claims and with the statement “ the foregoing claims for the refunding of taxes erroneously assessed and paid have been examined and allowed and are transmitted to the Secretary of the Treasury for his consideration and advisement.” Shortly thereafter the commissioner resigned and his successor was appointed. The Secretary returned the claim in question to the successor “ for reexamination, declining to consider them unless again submitted by your office.” The question on appeal was whether the action of the first commissioner constituted a final award binding the Government, The Supreme Court recognized the right, under the statute, of the Secretary to make regulations and decided that the commissioner had taken no final action, holding that “ the matter was one still pending until the action of Commissioner Douglass, on November 9, 1871, rejecting the claim.” The case is also important in that it recognizes the necessity of an observance by the commissioner of the prescribed regulations in the matter of making entries upon his books.
We can not accept the ruling in the cases relied upon by plaintiff without departing from decisions of our own court and of the Supreme Court. Nor do we understand that the application for an abatement of the tax and its denial can take the place of the necessary protest upon payment. Chesebrough case, 192 U. S., 253; New York & Cuba Mail S. S. Co., 200 U. S., 488; Hvoslef case, 237 U. S., 1, 9; Rand case, 52 C. Cls., 72. A cause of action for the erroneous or illegal assessment or collection of internal-revenue tax does not accrue before payment of the tax. An appeal for the abatement of the assessment may be authorized by law, but it is voluntary, and its rejection affords no basis for relief. The appeal for a refund, which can only be made after payment of the amount sought to have refunded, is not only authorized but is required as a condition precedent to the maintenance of an action in any court for the recovery of the tax. And, as affects suits against the Government, the required decision by the commissioner upon the appeal becomes the more important in view of the suggestion in the *35 Medbury case that the commissioner’s findings of fact may be conclusive (173 U. S., 497). At any rate, the court should have the benefit of the commissioner’s findings of fact. The regulations prescribed by the Secretary distinguish between applications.for an abatement of the tas and for a refund of the tax, and upon the face of the regulation providing Form 47 is a notice that the filing of the claim for ah abatement shall not prevent the collection, and that the collector should, if necessary, “ collect the tax and leave the taxpayer to his remedy by claim under Form 46,” and the regulation also provides that “ claims for refunding of taxes and penalties must be made out upon Form 46.”
Without passing upon the question of the plaintiff’s liability to the tax, we rest our decision upon the question above discussed, and hold that, not having appealed to the commissioner for refund of the tax, the plaintiff has no right of action in this court. United States v. Savings Bank, 104 U. S., 728; Savings Institution v. Blair, 116 U. S., 200; Railroad Co. v. United States, 110 U. S., 543, 548; Public Service Co. v. Herold, 229 Fed., 902; Kaufman case, 96 U. S., 567.
It follows that the petition must be dismissed, and it is so ordered.
Judge Hav, Judge Downey, Judge BaRkey, and Judge Booth concur.