# THE WARNER VALLEY STOCK COMPANY

*v.*

## SMITH.

PUBLIC LANDS; CONFIRMATION OF TITLE; STATUTORY CONSTRUC-
TION; DISCRETIONARY ACTION OF EXECUTIVE OFFICER.

1. The final act of confirmation of title referred to in the act of
Congress of March 12, 1860 (12 Stat. 3), extending to the
States of Minnesota and Oregon the provisions of the act of
September 28, 1850 (9 Stat. 519), wherein it is provided that
the grant to those States of swamp and overflowed lands shall
not include lands which the Government may have reserved,
sold or disposed of prior to the confirmation of title to be made
under the authority of the act, is the patent required to be is-
sued by the act of 1850.

2. The courts are without power to interfere, either by injunction or
mandamus, with the exercise by the Secretary of the Interior
of the discretion vested in him to determine whether lands
are, within the meaning of those acts, in fact " swamp and over-
flowed," and whether they are such as the Government may
have reserved, sold or disposed of prior to the confirmation of
title.

3. Where certain lists of lands presented to the Secretary of the In-
terior were approved and passed for patent as being " swamp
and overflowed " within the meaning of those acts, " subject
to any valid adverse rights that may exist," and before the
patent issued a petition was filed by adverse claimants, and
the Secretary thereupon cancelled his approval and reopened
the controversy, and upon his retirement from office before
determining the question, his successor took up the matter and
reached the conclusion that the lands were not swamp and
overflowed within the meaning of those acts, and were also
subject to claims by persons under other laws, it was *held* that it
was within the power of the Secretary of the Interior to revoke
and cancel his approval and reopen the controversy.

4. Whether his successor in office erred in his conclusion that the

lands were not swamp or overflowed and were the subject of claim by persons under other laws, is not a question for the courts to determine.

No. 566.   Submitted April 29, 1896.   Decided June 11, 1896.

HEARING on an appeal by complainants from a decree sustaining a demurrer to and dismissing a bill for an injunction. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree sustaining a demurrer to and dismissing appellant's bill for an injunction against Hoke Smith, the Secretary of the Interior, and Silas W. Lamoreux, the Commissioner of the General Land Office.

The appellant, the Warner Valley Stock Company, claims the title to certain lands under grant from the State of Oregon as swamp lands under the act of September 28, 1850, granting swamp lands to the State of Arkansas; and the act of March 12, 1860, extending the provisions thereof to certain other States, including Oregon.

It appears from the bill and exhibits that the State of Oregon made selections of certain lands, including those in controversy, as "swamp and overflowed lands," under the provisions of the act of Congress.   That on January 17, 1887, the Secretary of the Interior directed the public surveys to be made throughout what is termed Lake Warner (embracing the territory in question), and plats of the said survey were filed about December 6, 1888.   December 29, 1888, the surveyor general of the United States for Oregon certified to the Commissioner of the General Land Office lists of lands of many thousand acres, including therein parts of the lands that had been selected as above by the State of Oregon.   Copies of this list were sent to the special agent of the United States at Lakeview, Oregon, and the allegation is that it was agreed between the officials of the Land Office and the officials of said State that the report of said special agent should be accepted as final and

conclusive in so far as the character of the lands as "swamp and overflowed" was concerned ; said report, however, not to operate as a bar to claims of settlers who might have gone on said lands under the provisions of general land laws passed prior to March 12, 1860.

As a result of various reports so made, the claim of the State to 5,200 acres was rejected, and to 22,869 acres was allowed and confirmed ; whilst as to 10,831 acres reported as "swamp and overflowed," the claim of the State was held in abeyance, on account of pending claims of settlers.   On March 21, 1892, the Commissioner of the General Land Office submitted a list known as No. 30, containing 1,976.51 acres, as having been decided to be "swamped and overflowed," and recommended that the same be approved as belonging to the State, and so forth.

That on April 9, 1892, the local officers having reported that no valid adverse rights to said lands existed, the same was approved by the Secretary of the Interior and noted on the records and tract books of the General Land Office ; and a copy sent to the Governor of Oregon, who, on May 12, 1892, demanded a patent therefor.   Another list, called No. 31, was so reported, approved and certified December 20, 1892.

The certified transcript from the records of the Land Office shows that the certificates were made by the examining clerk and the chief of division, and recites that the tract books of the office show the claim of the State " free from conflict by sale or otherwise ; " and also that the register at Lakeview had reported that no claims adverse to that of the State appeared of record in his office.   These were submitted by the Commissioner to the Secretary and approval recommended.   The approval of the Secretary, made April 9 and December 3, 1892, respectively, reads : "Subject to any valid adverse rights that may exist to the tracts of land therein described."   It appears that on December 29, 1892, certain persons claiming the land filed a petition with the

Secretary praying him to exercise his supervisory jurisdiction in the premises.

On January 9, 1893, the Secretary of the Interior, Hon. John W. Noble, took cognizance of the petition, and at once ordered the Commissioner to issue no patents to the State of Oregon until further advised. On January 23, 1893, counsel for the assignees of the State of Oregon filed a petition asking that said patents be granted. After the filing of certain other papers and affidavits by the opposing claimants, the Secretary was of the opinion that the matter of patent should be suspended for further hearing, and then and there revoked and cancelled his former approval, and ordered the Commissioner to make a full report of all the matters contained in the claim of the settlers and to transmit therewith all papers relating thereto for consideration and further direction.

The report and papers came before the Hon. Hoke Smith, who succeeded Secretary Noble, and were by him considered December 19, 1893. The proceeding was entitled J. L. Morrow et al. v. The State of Oregon, R. F. McConoughy et al.

The Secretary carefully reviewed all the proceedings in the matter and the evidence touching the issues of the case, and arrived at the conclusion that the lands were not "swamp and overflowed." He found also that "nearly if not quite all the lands aforesaid, described by subdivisions in lists 30 and 31 and embraced in this decision, are claimed under the pre-emption, homestead, timber culture, and desert land laws by persons who initiated their proceedings in the year 1889 ; that nearly, if not quite, all of said claims have been contested by the State of Oregon or by persons alleged to be her assignees, and that many decisions have been made in favor of such contestants."

He was also of opinion that the facts before him were not sufficient to enable him to act advisedly in the pending contest, and therefore ordered all decisions concerning the entries to be set aside and the several cases thereof to be

further prosecuted in accordance with law and the practice of the Department. On October 10, 1894, he overruled a motion for rehearing made on behalf of the interests claimed by the appellant.

The foregoing decision was certified to the register and receiver of the United States Land Office at Lakeview, Oregon, January 5, 1895, and direction given to them to reinstate the files or entries which had been formerly cancelled as in conflict with the claims of the State of Oregon.

Complainant, denying the right of the Secretary to revoke the approval that had been made of the lists No. 30 and No. 31 aforesaid, filed its bill alleging the facts aforesaid, and the irreparable damage that would be done to it by entertaining adverse claims in the Department, two of which had already been patented, and so forth.

The prayer is for an injunction to restrain the Secretary and Commissioner " from assuming to exercise further jurisdiction with respect to the disposition of lands described in Oregon swamp-land lists No. 30 and No. 31, and from further trespassing upon your orator's right of quiet possession thereof, and that said defendant, Hoke Smith, may be commanded and enjoined to prepare for issuance unto your orator, in accordance with law, patents for said land," etc.

*Mr. Samuel F. Phillips* and *Mr. Frederick D. McKenney* (*Mr. Charles A. Cogswell* and *Mr. James B. McCrellis* of counsel) for the appellant:

1. The Supreme Court of the District of Columbia has the power to enjoin the head of an executive department in a proper case. Whatever doubt may have formerly existed in reference to the above proposition has been removed by the decision of the Supreme Court of the United States in the case of *Noble* v. *Union River Logging Railroad Company*, 147 U. S. 165.

2. The acts of September 28, 1850, and March 12, 1860, operated as grants *in præsenti* to the State of Oregon of particular lands to be thereafter identified, the Secretary of the

Interior being constituted a special tribunal for that purpose. Upon identification of the granted lands, the title thereto became perfected in the State. The patent operated merely as record evidence of the title. It added nothing to the title itself. Such was the uniform construction of the act by the Interior Department from 1850 to recent times. 1 Lester's Land Laws, 555, 557, 562; 2 Copp's Land Laws, 1048; 4 Land Dec. 415; 9 Opin. Atty. Gen., 1 Lester's Land Laws, 564.

To like effect are a large number of the decisions of the State courts which have been called upon to construe these swamp land acts. *Allison* v. *Halfacre,* 11 Iowa, 450; *Bailey* v. *Callinan,* 87 Iowa, 107; *Whiteside Co.* v. *State's Att'y,* 31 Ill. 68; *Keller* v. *Brickey,* 78 Ill. 133; *Sherman* v. *Cooke Co.,* 98 Mich. 61. In *Fore* v. *Williams,* 35 Miss. 533, it was held that the title vested when the lists and plats were made out and approved by the secretary and accepted by the governor, and the doctrine of that case was approved and adopted in *Hannibal Railroad Co.* v. *Smith,* 41 Mo. 311. See also *Masterson* v. *Marshall,* 65 Mo. 9; *Busch* v. *Donohue,* 31 Mich. 481; *Fletcher* v. *Pool,* 20 Ark. 100; *Branch* v. *Mitchell,* 24 Ark 444.

In *Gaston* v. *Scott,* 5 Oregon, 61, the point is exhaustively discussed and the conclusion reached that the vesting of title is not dependent upon the issuance of patent; and, further, that the State has power to convey "swamp lands" prior to the certification thereof by the secretary.

The point first came before the Supreme Court of the United States in *Railroad Co.* v. *Smith,* 9 Wall. 95–102. The action was ejectment to recover lands claimed by the railroad company under an act of June 10, 1852, granting lands to the State of Missouri for railroad purposes, against the defendant Smith, who was in possession as grantee of the State, claiming title under the swamp land grant. It was admitted that title had vested in the railroad company unless the lands were of the class reserved from the grant

as " swamp lands." The lands had not been identified as " swamp " by the secretary, and the question was as to the admission of verbal testimony at the trial to prove their character ; and parol evidence to determine the character of the lands then in suit was held properly admissible. See also *French* v. *Fyan,* 3 Otto, 169 ; *Wright* v. *Roseberry,* 121 U. S. 488 ; *Irwin* v. *Savings Union,* 136 U. S. 578 ; *Tubbs* v. *Wilhoit,* 138 U. S. 134.

The identification by the Secretary of the lands as swamp and overflowed, and the evidencing of such identification by approving the clear lists, perfected the title thereto in the State. The noting of such approval upon the tract books in due course of office perfected the "title by record." The identification and notation of " approval" were the last acts in the series necessary to perfect the title. They closed the proceeding, so far as the Department of the Interior was concerned, as fully as if patents had actually been issued. *United States* v. *Arredondo,* 6 Pet. 729, 730 ; *United States* v. *Stone,* 2 Wall. 535 ; *United States* v. *Throckmorton,* 98 U. S. 61 ; *Vance* v. *Burbank,* 101 U. S. 519 ; *French* v. *Fyan,* 93 U. S. 171 ; *Tubbs* v. *Wilhoit,* 138 U. S. 146 ; *United States* v. *Schurz,* 102 U. S. 401 ; *Butterworth* v. *Hoe,* 112 U. S. 68.

3. When the secretary, in due course of business, advisedly and with intent, identified the granted lands by approving the clear list thereof, he became with respect thereto *functus officio,* and was without lawful power to set aside such identification or cancel or revoke such approval, nor could his successor in office lawfully render such identification null. By the identification of the lands as swamp and overflowed within the meaning of the statute and the approval of the lists containing the description thereof, the title at once became perfected in the State. If fraud had been practiced in connection therewith, or the approval had been founded in mistake, appeal to the courts was the only remedy. The secretary could not divert the title by arbitrarily withholding the patents or withdrawing his approval.

As well might a private citizen attempt to reinvest himself with title to a piece of land which he had conveyed by laying violent hands upon the title deed. The action of the secretary in identifying the lands and approving the lists was not void. At most it was but voidable, for he was possessed of authority and jurisdiction to act upon the facts presented to him, and the lands were subject to disposal. *Noble* v. *Union River Logging R. Co.,* 147 U. S. 165; *Moffat* v. *United States,* 112 U. S. 24; *United States* v. *Minor,* 114 U. S. 233; *Moore* v. *Robbins,* 96 U. S. 530; *United States* v. *Schurz,* 102 U. S. 378.

4. The beds of non-navigable lakes and streams within the borders of a State are not subject to the disposal of the United States as public lands. *Pollard* v. *Hagan,* 3 How. 219 ; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272 ; *Hardin* v. *Jordan,* 140 U. S. 371; *Barney* v. *Keokuk,* 94 U. S. 324.

5. Plaintiff, upon its title as averred in the bill, is entitled to maintain this action. A purchaser from the State of lands selected as swamp and overflowed, on making the first payment and receiving a receipt or certificate therefor, is entitled, if the land is in fact swamp or has been so designated by the Secretary of the Interior, to the possession thereof. He " is undoubtedly the legal owner of that (land) described in the deed, and as such may maintain ejectment, trespass, or replevin." *McConnaughy* v. *Wiley,* 33 Fed. Rep. 449. And also a bill for an injunction against the State officers, even to the governor, if they or he seek to interfere with the possession thereof or title thereto. *McConnaughy* v. *Pennoyer,* 43 Fed. Rep. 196, 339 ; S. C. 140 U. S. 1–25.

6. Plaintiff has no adequate remedy at law. That mandamus would lie is no objection to the maintenance of a bill for injunction. Of two extraordinary remedies, either of which would fit the case, the courts favor the one which will afford adequate relief with the least violence, and in actions concerning high officials courts are prone to grant negative rather than affirmative relief. Usually, as in the present.

case, an injunction affords ample relief, is the more expeditious, and merely stays the hand of the official. High, Extraordinary Remedies, Section 6.

Where parties have invoked the aid of equity and that court is empowered to determine the controversy and to afford ample relief, " a court of law will refuse to lend its extraordinary power to determine a litigation which may as well be determined where begun." The fact that a court of equity has acquired jurisdiction of the same subject-matter. and has full power to grant relief or to compel performance of the thing sought, is a complete bar to the exercise of jurisdiction by mandamus. High, Extraordinary Remedies, Sec. 21; *Queen* v. *Pitt*, 10 Ad. & E. 272; *People* v. *Warfield*, 20 Ill. 160; *People* v. *Chicago*, 53 Ill. 424; *Hardcastle* v. *R. Co.*, 32 Md. 32.

*Mr. John I. Hall*, Assistant Attorney General of the United States, and *Mr. E. F. Best* for the appellees:

1. Under the provisions of the act of September 28, 1850, the Secretary of the Interior was made the sole tribunal to determine what lands were of the character intended to be granted by the act, and his office was made the tribunal whose decision on that subject was to be controlling. *French* v. *Fyan*, 93 U. S. 169. No court has ever assumed to exercise jurisdiction in such cases except when it was shown that the secretary had neglected or refused to act. *Railroad Co.* v. *Smith*, 9 Wall. 95; *Wright* v. *Roseberry*, 121 U. S. 488.

2. Prior to the issuing of a patent therefor the fee simple to the lands does not vest in the State, and the lands prior to the date of the patent are not subject to the disposal of the legislature. *French* v. *Fyan, supra; Barden* v. *Railroad Co.*, 154 U. S. 288.

3. In the disposal of the public domain, the jurisdiction and control over the lands and the determination of all questions arising thereunder rests solely with the Secretary of the Interior until every act has been done requisite to the

passing of the fee simple title.   The courts have no jurisdiction over the subject-matter until the title has passed from the Government, and with the passing of such title the functions of the department cease.   *Noble* v. *Union River Logging Co.*, 147 U. S. 165 ; *New Orleans* v. *Paine*, 147 U.S. 261.

The approval by the secretary in the case of the Union River Logging Company was the final act of the Department which caused the title to pass from the Government, and the authority of the executive to exercise further control over it passed with such approval.   This is the distinction between that case and the case at bar, in which the title had not passed, but the controversy was still pending undetermined before the department.

4.  No other tribunal having jurisdiction to determine the right to the public lands of the United States until after the issuance of patent, it must follow that prior to that time the sole jurisdiction over all matters relating to the disposal of the public domain must rest with the Secretary of the Interior and the Commissioner of the General Land Office; and where an error has been committed through inadvertance or mistake, and the patent, if issued, would have to be annulled, he has as ample authority to vacate and revoke his action and to correct the wrong as a court would have after the issuance of patent.   *Knight* v. *U. S. Land Association*, 142 U. S. 179 ; *Williams* v. *United States*, 138 U. S. 514.

In all proceedings affecting titles to land before the Department of the Interior the power of supervision may be exercised by the secretary at any time before the issuance of patent, whether such defect is brought to his attention by formal notice or appeal.   *Knight* v. *U. S. Land Association*, 142 U. S. 179 ; *Williams* v. *United States*, 138 U. S. 514.

5.  An injunction or a mandamus will not lie against an officer of the land department to control him in discharging an official duty which requires the exercise of his judgment and discretion, nor have the courts any jurisdiction of the parties to determine their respective rights to a tract of pub-

lic land which is the subject-matter of a pending contro-
versy before the department. *Marquez* v. *Frisbie,* 101 U. S.
473; *Gaines* v. *Thompson,* 7 Wall. 347 ; *Litchfield* v. *Register
and Receiver,* 9 Wall. 575; *Secretary* v. *McGarrahan,* 9 Wall.
298.

The allowance of the pre-emption filing and homestead
entries to the lands in controversy were authorized by the
rule adopted by Secretary Lamar, December 13, 1886, rela-
tive to the admission of entries and filings selected as swamp
and overflowed, prior to approval and certification.

By leave of court, *Mr. John Mullan, Mr. Joseph K. McCam-
mon* and *Mr. James H. Hayden* appeared in behalf of parties
asserting claims antagonistic to that of the appellant:

1. The jurisdiction of the Secretary of the Interior is
paramount and exclusive in all questions and cases affect-
ing the disposition of the public lands of the United States,
where discretion is given him by statute to determine the
law and the facts. Until the final act recording a patent is
effected there still remains in the secretary the right to deter-
mine to whom the land in question shall go. *U. S.* v. *Schurz*
102 U. S. 378; *Wright* v. *Roseberry,* 121 U. S. 488; *Heath* v.
*Wallace,* 138 U. S. 573; *Williams* v. *U. S.,* 138 U. S. 515;
*Knight* v. *U. S. Land Assn.,* 142 U. S. 161.

2. The method of acquiring title to swamp and over-
flowed lands by the State of Oregon is provided for by the
act of Congress approved September 28, 1850, and the act
of Congress approved March 12, 1860. It is apparent that,
although the grant of swamp lands to Oregon was *in præsenti,*
the identification of such lands was left within the sole juris-
diction and determination of the Secretary of the Interior.
In no case can the secretary avoid the responsibility of
deciding whether lands applied for are within the descrip-
tion of the granting act.

The Act of 1850, Sec. 2, provides " that it shall be the
duty of the Secretary of the Interior . . . to make out

an accurate list and plats of the lands described as afore-
said (swamp and overflowed lands made unfit for cultiva-
tion which shall remain unsold at the passage of the act)
and transmit the same to the governor of the State." Inde-
pendent of the other points which will be discussed, the first
thing to be noticed is that the secretary is required to make
out an accurate list and plats of the lands.  In other words,
before the matter passes from his jurisdiction, he must be
satisfied that the list and plats are accurate; otherwise he
will fail to do his duty.  The word " accurate " presupposes
a conclusion, a decision, which, so far as human judgment
can ascertain the fact, must be exact, definite and determi-
nate.  If the secretary be ordered by the court to act upon
lists which, in his best judgment, he considers not to be ac-
curate, such a decree would seem to violate fundamental
principles of law.

The secretary has an additional duty under the Act of
1850 ; to " transmit the same accurate lists and plats to the
governor of the State." ⸱ If it is supposable that the Supreme
Court of the District of Columbia has any jurisdiction what-
ever in cases of this nature, it is suggested that it might be
exercised with much propriety against the Secretary of the
Interior, if it were made to appear to the court that he was
about to transmit lists and plats to the governor of the State
of Oregon which he (the secretary) knew were not accurate.

Arguing the case on a broader plane, we submit that the
secretary's jurisdiction over the disposition of the public
lands, including swamp lands, does not cease so long as
there remains any period of time, before the issuing of the
patent and the recording of the same, in which he can be
made acquainted with any fact or principle of law which
may aid in reaching what, in his judgment, is a proper and
correct decision and determination.  This is the scope of
the authority of the secretary which was recognized by
Congress, in both the acts of September 28, 1850, and March

12, 1860.   *French* v. *Fyan*, 93 U. S. 169 ; 19 Op. A. G. 684 ; *Wright* v. *Roseberry*, 121 U. S. 481.

Until the final act of the secretary in identifying the land has been performed, it is within his power to cancel any lists on the ground that they are not accurate, as contemplated by the act of 1850.   It appears that Secretary Noble approved the lists in controversy, subject to any valid adverse rights that might exist to the lands therein described.   Bearing in mind that the Secretary of the Interior was the tribunal who was to determine the character of these lands and that he has, once for all, determined that the former action of the department was a mistake, and that the lands in controversy were not swamp lands, it was within his authority so to act, and it is still within his authority to change this last decision and ruling as many times as he deems fit and proper, acting, as he does, at all times, within the discretion conferred upon him as a judicial officer.   *State of Michigan*, 7 L. D. 514, 523 ; *Knight* v. *U. S. Land Assn.*, 142 U. S. 161.

The contention relative to the secretary's right to interfere before patent is not weakened by the language used in the case of *Wright* v. *Roseberry, supra,* wherein it is held that swamp lands in California passed by the operation of the first[section of the act of 1850, and not by that of the second section.   This is only true when the secretary has refused to act or identify the lands, or when no question has ever arisen to throw doubt upon the swampy character of the land in controversy.

It is clear that the lands described in the bill of complaint (except those patented to Cameron and Maupin) are claimed by the United States as part of the public domain.   The Secretary of the Interior and the Commissioner of the General Land Office make no claim to any personal right, use, or control of the lands, but are simply proceeding, as they are in duty bound, to ascertain whether the said lands belong to the United States or to the State of Oregon and its

assignees. If they belong to the United States, it certainly can use or dispose of them for its own benefit. It is therefore apparent that the United States is the real party in interest, and the defendants simply acting as its agents in its behalf, and in respect to property which it claims for its own proper use and behoof, are not subject to injunction, and this honorable court is without jurisdiction in the premises. *Belknap* v. *Schild*, 161 U. S. 10.

3. It does not appear from the bill of complaint herein that the plaintiff has such title or interest in or to the lands described therein as to enable it to maintain suit against the defendants. It appearing, from the allegations of the bill, that the title to the lands in question has never been confirmed or vested in the State of Oregon, and that the State of Oregon is not and never has been in possession of them, the Warner Valley Stock Company, which it is alleged by the bill is the grantee or assignee of the State of Oregon, by a series of mesne conveyances, has not such a title to the lands in question as to give it a right to maintain this suit in its own name. It can have no better title or right than the State of Oregon would have at the present time, had it made no assignment or grant relating to or affecting the lands in question, and that right is not one that either law or equity will recognize, at the instance of the assignee alone. 1 Am. & Eng. Enc. L. 833, note 1 ; *Marshall* v. *Means*, 12 Ga. 61 (1852); *Knight* v. *U. S. Land Assn.*, 142 U. S. 161.

4. The truth of the facts alleged by the plaintiff in its bill has not been verified in accordance with law. The verification of the bill of complaint herein is as follows: " District of Columbia, ss: I, George M. Kober, being first duly sworn, depose and say that I am director of the Warner Valley Cattle Company (a corporation); that I have read the foregoing bill of complaint and know well the contents thereof, and the statements of facts in said bill of complaint contained are true. George M. Kober. Subscribed and

sworn to before me this 13th day of January, A. D. 1896.
R. H. Evans, *Notary Public, D. C.* (Seal.)"

This does not comply with the requirements of equity
rules 89 and 90 of the Supreme Court of the District of
Columbia, the affiant, George M. Kober, does not state the
source whence he derives his knowledge of the contents of
the bill, nor does his verification set forth that the facts
stated in the bill are true of his personal knowledge.    It
does not appear that he was an officer of the plaintiff cor-
poration, nor did he sign the bill in that capacity.    The
averment in his affidavit that he is a director of the Warner
Valley Cattle Company does not indicate that he is an officer
of or connected with the Warner Valley Stock Company.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The decision of the main question involved in this
appeal depends upon the construction to be given the pro-
visions of the acts of Congress referred to above and the
proceedings that have been had thereunder in respect of the
lands in the Land Department of the Government.

The original act approved September 28, 1850 (9 Stat.
U. S. 519), grants to the State of Arkansas:

"Sec. 1.  .  .  .  The whole of those swamp and over-
flowed lands made unfit thereby for cultivation which shall
remain unsold at the passage of this act," and declares that
they "shall be and are hereby granted to said State."

Section 2, down to a proviso that is unimportant in this
case, reads thus:

"Sec. 2. *And be it further enacted,* That it shall be the duty
of the Secretary of the Interior, as soon as may be practica-
ble after the passage of this act, to make out an accurate
list and plats of the lands described as aforesaid, and trans-
mit the same to the governor of the State of Arkansas, and,
at the request of said governor, cause a patent to be issued
to the State therefor; and on that patent, the fee simple to
said lands shall vest in the said State of Arkansas, subject
to the disposal of the legislature thereof."

The act of March 12, 1860 (12 Stat. U. S. 3), extends the provisions of the foregoing act to the States of Minnesota and Oregon (Section 1) with the following proviso :

" *Provided,* That the grant hereby made shall not include any lands which the Government of the United States may have reserved, sold or disposed of (in pursuance of any law heretofore enacted) prior to the confirmation of title to be made under the authority of the said act.

" Sec. 2. *And be it further enacted,* That the selection to be made from lands already surveyed in each of the States, including Minnesota and Oregon, under the authority of the act aforesaid and of the act to aid the State of Louisiana in draining the swamp lands therein, approved March second, one thousand eight hundred and forty-nine, shall be made within two years from the adjournment of the legislature of each State at its next session after the date of this act; and, as to all lands hereafter to be surveyed, within two years from such adjournment, at the next session, after notice by the Secretary of the Interior to the governor of the State, that the surveys have been completed and confirmed."

2. We shall pass by some interesting questions that have been presented on the able argument for the appellant, because they are not necessary to be decided, under our view of the case, and will, no doubt, hereafter arise in other courts, in which adverse claimants of the land may litigate the title.

Conceding that the statute is itself a grant of all " swamp and overflowed" lands, within her limits, to the State of Oregon, and that the actual issue of a patent is not necessary to the vesting of her right, does not settle the question presented here. Before the title could pass out of the United States to any particular tract of land and become vested in the State of Oregon, or its grantee, to the full extent and with all the rights asserted on behalf of the appellee in this proceeding, two facts must be ascertained : First, is the land selected and claimed " swamp and overflowed" within the meaning of the act of 1850; second, is it such as, within the

proviso of the Act of 1860, "the Government of the United States may have reserved, sold, or disposed of (in pursuance of any law heretofore enacted) prior to the *confirmation of title* to be made under the authority of this act?" *Heath* v. *Wallace*, 138 U. S. 573; *McCormick* v. *Hayes*, 159 U. S. 332, 339, 343; *Barden* v. *N. P. RR. Co.*, 154 U. S. 288, 329.

3. The ascertainment of these facts has been entrusted primarily, at least, to the Land Department, of which the Secretary of the Interior is the head. Whilst engaged therein, the courts have no power to interfere with the exercise of his discretion in the premises by either injunction or mandamus. *Gaines* v. *Thompson*, 7 Wall. 347, 352; *New Orleans* v. *Paine*, 147 U. S. 261.

Whether the decision of the secretary, when made, will be conclusive as to the rights of all claimants to the title, is a question that will arise in litigation that must necessarily be carried on in other courts.

4. The appellant contends, however, that Secretary Noble made the necessary decision when he approved the lists and notified the Governor of Oregon ; and that he had no power to recall the approval and reopen the controversy.

The question is a difficult one, and it is not without some doubt that we have arrived at the conclusion that the secretary did have that power. This follows, we think, from the doctrine of the following cases and others referred to in them : *Knight* v. *Land Association*, 142 U. S. 161, 178 ; *New Orleans* v. *Paine*, 147 U. S. 261.

The final act of confirmation of title, referred to in the statute of 1860, must be the patent required to be issued ; "and on that patent the fee simple to said lands shall vest in the said State." Act of 1850, Sec. 2.

Secretary Noble, in approving the lists and passing them for patent, acted upon the information certified to him, that the lands had been found to be "swamp and overflowed" by the report of the agent, and that the claim of the State was found free from conflict by sale or otherwise. He seems to

have accepted the certificate, and, in so far as it concerned the status of the land as "swamp and overflowed," to have made his approval without condition; but not so in respect of adverse claims. As to the latter his approval was expressly "subject to any valid adverse rights that may exist to any of the tracts therein described."

Before the expiration of the month in which the second list had been approved, a petition was filed in the department by certain adverse claimants, under other legislation of Congress respecting the public lands, in which the secretary was advised that there were not only adverse claims, but also that the lands were not in fact "swamp and overflowed." Having reason to believe that he may have been led into error, the secretary cancelled entirely the approval of the lists, and ordered a full report to be made and submitted to him, with all the papers relating to the matter, for examination and determination of the questions involved.

Before the matter could be finally acted upon, Secretary Noble retired from office and was succeeded by Secretary Smith. The latter has not revoked an order or reviewed a decision of his predecessor. He has merely taken up the matter, in the course of his duty, as unfinished business of the department. After careful examination, he came to the conclusion, as we have seen, that the said lands were not "swamp and overflowed," within the meaning of the act of Congress; and that they were the subject of claim, by many persons, under pre-emption, homestead, and other laws of the United States. Whether he erred in the foregoing conclusions, is not a question for our determination. If it were, there are no facts presented by the record by which we could determine it.

In recognizing and affirming the act of his predecessor, he seems to have followed the established practice of the department in treating the matter as undecided and subject to new inquiry until the issue of patent.

That practice and the power of the secretary have been stated by a former secretary in language that was expressly approved in *Knight* v. *Land Association*, 142 U. S. 178, as follows: "The statutes, in placing the whole business of the department under the supervision of the secretary, invest him with the authority to review, reverse, amend, annul, or affirm all proceedings in the department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised, in the absence of statutory direction, may be prescribed by such rules and regulations as the secretary may adopt. When proceedings affecting titles to lands are before the department, the power of supervision may be exercised by the secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the department in the dispatch of business, not to defeat the supervision of the secretary. For example, if, when a patent is about to issue, the secretary should discover a fatal defect in the proceedings, or that, by reason of some newly ascertained fact, the patent, if issued, would have to be annulled, and that it would be his duty to ask the attorney general to institute proceedings for its annulment, it would hardly be seriously contended that the secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow proceedings to be consummated which it would be immediately his duty to ask the attorney general to take measures to annul. It would not be a sufficient answer against the exercise of his power that no appeal had been taken to him and therefore he was without authority in the matter." 5 Land Dec. 494.

We agree with the learned justice who heard the cause

that the case here differs from *Noble* v. *The Union River Logging RR. Co.*, 147 U. S. 165, upon which the appellant strongly relies. " That case," he correctly said, " arose under a law granting to railroad companies the right of way over public lands. It contained a provision that a railroad company seeking to have the benefit of the act shall file with the register of the land office for the district where the land is located a profile of its route, and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said said office, and thereafter all lands over which said right of way shall pass shall be disposed of subject to said right of way. The final act here was noting the profile which had been approved by the Secretary of the Interior upon the plats in the land office, and from that moment the right of way was established." No patent was required by the statute in that case to convey the easement. The right thereto vested upon approval of the profile and the delineation of the right of way upon the plats; and was, therefore, held beyond recall by a succeeding secretary.

In this case, the noting of the lists of " swamp and overflowed " lands upon the tract books of the department was not required or provided for by the acts of Congress; but the issue of the patent was expressly provided for as the last act in the series essential to the complete vesting of the title.

We find no error in the decree appealed from, and will, therefore, affirm it with costs to the appellees.

*Affirmed with costs.*

An appeal was taken to the Supreme Court of the United States; and that court on January 11, 1897, reversed the decree of the Court of Appeals, and remanded the cause to this court with directions to reverse the decree of the court below and to remand the cause to that court with directions to dismiss the bill for want of necessary parties. 165 U. S. 28.